Garland, J.
The petitioner, Caroline E. Wilcox, represents that, on the 1st of January, 1842, she being then a minor, and) also the widow of the late H. A. S. Mussenden, was induced by *339 the defendant, to make a promissory note payable to him for $5S86 92, with interest at ten per cent from date. She avers, that the note was given without consideration, and at a time when she was incapable of contracting, or binding herself by any such obligation. She further alleges that, on or about the 12th of March, 1842, the defendant induced her to draw a draft, or order on W. & J. Montgomery, of New Orleans, for the sum of $823 61, without consideration, and upon the unjust and improper representation that said sum was owing by her, when it was not. She further avers that, on or about the 9th of August, 1842, shortly after her marriage with her present husband, the defendant procured from him a promissory note drawn by Henry Doyle, for the sum of $3125, with interest at six per cent per annum, from the 1st of June previous until paid, which note is her property and was transferred without consideration, being intended as an appropriation to discharge, in part, the aforesaid note of $5886 92 This note she claims to recover also.
She further represents, that she is joint owner, with George Henderson, of a plantation called the Forest Plantation, with a large number of slaves, situated in the parish of West Feliciana, and that the defendant has for the years 1839, 1840 and 1841, received the revenues of the same, and not accounted for them. The crop for the year 1839 was 564 bales, and the nett proceeds $22,024 61; that of 1840 was 366 bales, and the nett proceeds $13,027 62; and that of 1841 was 316 bales, and the nett proceeds $11,481 52; to one-half of all which she is entitled, and yet defendant refuses to account to her for it, her said portion being $23,266 97. The petition concludes with a prayer for an account of the proceeds of the crops and interest; also, for a restitution of the note of the petitioner for $5886 92, and of that of Doyle for $3125, with interest as stated, and for $823 61, the amount of the draft mentioned ; and for a judgment to meet the different allegations.
The defendant for answer denies all the allegations not specially admitted ; and avers, that it is true he was appointed tutor to the plaintiff, Caroline, as stated in the petition, but that before he received any property belonging to her, she was emancipated by her marriage with H. A. S. Mussenden. He admits that during the years 1839, 1810 and 1841, he had the control and man *340 agemcnt of the Forest Plantation, the joint property of the plaintiff, Caroline, and her brother, but that he did not administer her interest as tutor, but as agent, at the request of herself and her husband, Mussenden, to whom he has faithfully accounted and paid every thing, the correctness of which accounts cannot be examined in this action, and have not been legally questioned. He further avers, that when the petitioner executed her note on. the 1st January, 1842, it was for an acknowledged balance due on account of the administration of her revenues, which it was competent for her to make, and relative to which shecould contract; and that subsequently, when arrived at the age of majority, she ratified and confirmed the correctness of these acts, and has never authorized any one to question them. He specially denies the averment that the draft of $823 61, was given without consideration, and upon his representation that she owed the amount when she did not. He avers, that the note drawn by Doyle was transferred in part payment of the note of the petitioner Caroline, dated January 1st, 1842, which was for a balance of an account stated -and rendered on the 31st December, 1841. He further al-' leges, that all the transactions referred to, resulted from his management of the interest of the petitioner Caroline, in the plantation aforesaid, and the settlement of the affairs of Mussenden, her late husband, agreeably to her request. He alleges, that no error is disclosed or stated that requires examina- - tion, or gives a cause of action. After a special reservation of claims, which he intends hereafter to present for the board and education of the, petitioner Caroline, the defendant proceeds to claim a balance of $2761 92 with interest, as due on the note given on 1st January, 1842; and asks for a judgment in reconven tion.
By an amended answer, the defendant denies that the petitioner Caroline E. Wilcox authorized the institution of this suit, aud the averments in the petition that the note and draft were obtained without consideration, and when she was incapable of contracting, and propounds interrogatories to her to know if she did authorize the proceedings and averments. To these interrogatories she answered, that she knew of the existence of the suit, and left the -control and management of the business to her hus *341 band. After these answers were given, the defendant again amended his answer, and alleged, that as Wilcox, the husband of the plaintiff Caroline, had assumed the control of the case, and of the personal actions of his wife, he had approved and ratified the drawing of the draft, as he had in December, 1842, settled the affairs of the Forest Plantation for that year with defendant, and in the account stated, the draft on W. & J. Montgomery was charged with interest and costs of protest; to prove which facts, interrogatories were propounded to Whitman Wilcox, the husband, who answered that the draft was not included in the settlement; that he expressly forbade the firm of W. &. J. Montgomery from paying it; and that it was in no manner recognized in that settletlement, which was not final, but intended merely to ascertain the portion of George Henderson in the crop of that year.
In January, 1843, the plaintiffs amended their petition, and interrogated the defendant as to whether the wages of the overseer on the plantation for the year 1841 had been paid, and if not, to whom he looked for payment- ■ The answers admit that the wages have not been paid, and that the overseer looks to the plaintiffs for payment. About the same time, the defendant filed an exception, that the District Court is without jurisdiction to inquire into his acts as tutor, and can only decide upon those as agent of tire plaintiff Caroline, and of her former husband, all his acts as tutor having been ratified by an act passed on the 30th of May, 1842-
The facts necessary to be stated are, that a number of years ago, the defendant took into his family the plaintiff and her brother, who are his niece and nephew, and who had lqst their father, the brother of defendant, when they were very young. They had little or no property, and he was in very moderate circumstances, with a considerable family to support; yet the plaintiff and her brother were always treated as the children of the defendant. When the late Stephen Henderson died, in the year 1838, the plaintiff, her brother, and the defendant, became his heirs, and were legatees named in his will for some moderate legacies ; but by the compromise entered into in 1839 in relation to that rather extraordinary testament, all these parties suddenly became possessed of large fortunes. In the early part of the month *342 of April, 1839, the defendant was appointed tutor to his niece and nephew, and in a few weeks after, the former was married to one H. A. S. Mussenden, both of them being minors, and before the compromise was completed. An under-tutor was appointed, and to complete the compromise, it seems a curator, ad hoc, was also appointed to represent Mussenden and his wife. By this compromise, the Forest Plantation, slaves, &c., valued at nearly $100,000, and assets to a large amount, fell to the plaintiff and her brother, which plantation and slaves remained without partition until December, 1842. In his answer the defendant avers, and the evidence shows it to be true, that after he was appointed tutor, he received nothing of value on account of the plaintiff previous to her marriage; and he also alleges that, although he managed and controlled the Forest Plantation and its revenues, he did so, not as her tutor, but as agent of herself and her husband, both being emancipated by their marriage, and also as tutor of George Henderson, her brother, who owned one-half of it. In the subsequent stages of this controversy, the defendant endeavored to recall this admission, and insisted strongly, in the Probate Court of West Feliciana, when, in 1842, he was sued for a partition, that he was tutor ; and there was some difficulty in getting possession of the portion of the land and slaves belonging to the plaintiff Caroline. He also contended, that the District Court could not compel him to account; and, in fact, every means which able and ingenious counsel could devise, have been resorted to for the purpose of defeating this action. On the 5th of March, 1840, the plaintiff Caroline, and her former husband, gave the defendant a receipt in full for her share of the crop made on the Forest Plantation in 1839, and no complaint is made that it was executed in fraud or error. On the 28th of August, 1840, the defendant gave Mussenden a receipt for a draft of $2507 79, drawn on W. & J. Montgomery, which he says will, if paid, be in full of all accounts against him and wife to that date. This draft, it subsequently appears, was paid by W. & J. Montgomery, and charged to the plaintiff, Caroline, and her first husband. These documents show that, at the close of the summer of 1840, the parties had closed their accounts. In the month of December, 1840, Mussenden being in bad health, determined to seek a milder .climate, and the plaintiff (his wife,) accompanied him to *343 several of the West India Islands, where, in the month of Jane,. 1841, he died. Previously to leaving Baton Rouge, on the 17th of December, 1840, Mussenden and his wife gave the defendant a general power of attorney to act for them, by virtue of which he administered all their affairs, signed and endorsed notes, some of them payable to himself, and did all that seemed proper to himself. When Mussenden left the State, the defendant held his notes given for the price of a printing press and establishment for publishing a newspaper, for upwards of $4500, payable in April, 1841, and April, 1842. He also owed some other debts, but to-what amount is not shown. The defendant had the first series of these notes, due in April, 1841, discounted in bank • and when they fell due, he paid a part on them, and renewed the notes as agent, paying the curtailment and interest out of the revenues of the plantation, or the profits of the printing establishment, which was carried on for Mussenden’s benefit, in his absence, and the expenses charged to him ; but we see no credit for any proceeds from it. He also sold one-half of the establishment to Hueston for $2500, on a credit; and, as soon as he heard of Mussenden’s death, took out letters of administration on his estate, and in October, 1841, before the plaintiff Caroline returned to the State, sold all his property, for upwards of $3000, and took into his possession a large amount of accounts purporting to be owing to the printing establishment, some of which have been collected. The household furniture was purchased in the name of the plaintiff Caroline, and, so far as the record informs us, she has not paid for it. In December, 1841, she returned to this State, and in a short time after, renounced the community of acquests existing between her and her late husband, and left his succession in the defendant’s hands, who continues to be its administrator, so far as we know.
On the 31st of December, 1841, the defendant presented to the plaintiff Caroline, (she being still under twenty-one years of age,) two accounts ; one in the name of herself, and the other in the name of her late husband and herself, containing a variety of items, some relating to the plantation and her expenses abroad, and some to her late husband’s affairs, including one or more of the notes given by Mussenden for the newspaper establishment, and held by defendant. By these accounts he made it appear *344 that the plaintiff was indebted to him in the sum of $5886 92, for which he took her note, payable on demand, with interest as stated in the petition. In these accounts errors are alleged to exist, on account of which it is prayed that the note may be returned and cancelled. EL her from design or accident., or from not possessing a competent knowledge of the mode of keeping accounts, the defendant has mingled his individual affairs, those of the Forest Plantation, in which his nephew is interested, and those of the succession of Mussenden in the same settlement, and makes the plaintiff liable to him for all. The first item in his account against Mussenden and wife, is a charge of $4939 38 with interest, as the amount of their account due to W. & J. Montgomery, on 31st December, 1840 ; and the second is an item of $2746 76, with interest, as owing to the same persons on the 8th of March, 1841. When we turn to the accounts of Messrs. Montgomery, which are in evidence, we find that, on the 31st of December, 1840, they acknowledge a balance against themselves in favor of Mussenden of $4925 87 ; on the 8th of March, 1841, there is a balance of $43 59 in his favor ; and on the 31st of December, 1841, the same merchants acknowledge a balance in their hands in favor of Mussenden’s estate of $5519 48. Although the plaintiff Caroline, as soon as she returned to the State, renounced the succession of her first husband, she is regularly charged with many of his debts ; and the items are mingled in a manner difficult to be understood. Some short time after this settlement took place, the plaintiff Caroline arrived at the age. of majority; and, in the latter part of the spring of 1842, it being rumored that she was about to marry her present husband, the defendant conceived the plan of having a ratification of his acts in relation to different matters, particularly in relation to that of the compromise made with the heirs of Stephen Henderson ; and in that act, which was drawn by the defendant himself on the book of the Parish Judge and ex officio notary public, among many-other things, it is stated, that she has received of the defendant $625, being her fourth of a sum of money received by him from the executors of Stephen Henderson, previous to the compromise, but of which no mention is made in any account. She is also made to declare, that she has received the one half of the nett *345 amount of the crops and revenues of the Forest Plantation for the years 1839, 1840, and 1841, specifying the amount of each year’s revenue. The act then proceeds to declare, that on a settlement of accounts on the 31st of December, 1841, the appearer, (meaning the plaintiff Caroline,) was indebted to him, (the defendant,) in the sum of $5886 92, for money and advances, for which sum she has given her note, dated on the 1st of January, 1842, with ten per cent interest, “ which she hereby acknowledges and confirms.” Then follows an acknowledgment, that she has received full and satisfactory accounts and vouchers of the administration of the defendant, both as tutor and superintendent of the Forest Plantation. The evidence shows that, a few days before the passing of this act, defendant sent to the plaintiff Caroline, by his clerk and man of all work, the accounts on file, and left them with her several days for examination; but what vouchers accompanied them, is not shown with much certainty. It is proved, that when these documents were left, she looked over them, and complained of the charges of interest, when the witness who carried them assured her, there was nothing wrong, but that if there was, it was his (witness’) error, and not that of the defendant. She then said, that she supposed all was right; and expressed a wish that the defendant should not be informed that she had complained; and intimated her willingness to sign whatever act should be prepared. The one she did sign was written out by the defendant, without the slightest communication with the plaintiff Caroline, read over by him to her in the notary’s office, in presence of the witnesses, and signed without objection ; the accounts, so far as they related to any acts of tutorship, not being submitted to the inspection of the Probate Judge, who was the notary public, and present at the time.
The evidence further shows, that the plaintiff Caroline, although a woman of ordinary understanding, was married at an early age, to a husband not arrived at the age of majority; that she gave no attention, or but little, to accounts; that she had been brought up by the defendant as one of his children, and had the most unlimited confidencerin him; that after her marriage he continued to transact most of the business in which she was interested, up to the moment of passing the act of discharge, and *346 even afterwards, for we see that he continued to manage the plantation during the year 1842; and the possession of her half of it, and of the crop of that year, were only obtained after legal proceedings, bitterly contested for several months, after her second marriage. The note of Doyle was transferred to the defendant at his request, a few weeks after the marriage with Wilcox, when the latter seems to have had but little information in relation to the property belonging to his wife, and supposed she was largely indebted to her uncle. It was also attempted to be proved, that the plaintiff Caroline, had promised to pay all the debts of Mussenden, except one, which effort resulted in establishing that she had expressed a strong desire that these debts should be paid, but not that she promised to discharge them out of her own means. A witness named McFadgen, swears to a positive promise, or rather to an admission of a promise, made to him privately and in a low tone of voice, not heard by any one else, and after the commencement of this suit. This witness, from his own account, is a kind of agent of all work of the defendant, and evidently testifies under a strong bias in favor of his en}ployer.
The District Judge seems to have listened to all the evidence with much patience. He saw the witnesses, and heard not only them, but the parties also, answer the questions propounded to them ; and being fully satisfied that there were serious errors in the settlement, gave a judgment in favor of the plaintiffs, ordering the note given on the 1st day of January, 1842, to be delivered up to be cancelled, and the note of Doyle to be returned, or, in default thereof, a judgment to be given against defendant for its amount with interest; from which the latter has appealed.
We have no doubt that the plaintiff Caroline and Mussenden, were both emancipated by their marriage in April, 1839; and we have as little that she, by becoming a w'idow in 1841, previous to the age of majority, did not thereby return to a state of pupilage. The absurdity of such a proposition will be strongly illustrated by the fact, that before she was twenty-one years old, she was a mother and a widow, and consequently the tutrix of her minor child. It would be somewhat strange to see a widow representing her child as natural tutrix, whilst she was herself subject to the control of a dative tutor.
*347 It is not shown that the defendant, as tutor, received anything belonging to the plaintiff Caroline, in the short period between his appointment as such, and her marriage ; therefore, according to the doctrines stated in the case of Wilson v. Craighead, (6 Robinson, 429,) and in previous decisions, he had nothing to account for in that capacity. Of course, all that has been said in the case in relation to the administration as tutor and the rendition of an account and vouchers as such, may be passed over without comment, being irrelevant to the case. After the compromise among the heirs and legatees of Stephen Henderson in 1839, the defendant acted as the agent of the plaintiff Caroline, and as tutor of George Henderson, in the management of the plantation. In the transactions with Shipley, Walker, and Mussenden, in relation to the sale of the printing establishment and the transfer of the notes, the defendant was acting for himself. In December, 1840, when the defendant took a power of attorney from Mussenden and his wife, all parties seemed to understand their relationship; that was not altered until Mussenden died, and the defendant became his administrator, in the autumn of 1841. If the defendant had administered separately the interests confided to him in his different capacities, there would have been but little risk of confusion and error; but, as he has conducted the business, it was almost impossible to prevent mistakes ; and some gross errors are apparent in the accounts rendered when the note sued for was executed, and the act of the 30th May, 1842, passed. The shortest and best mode of making a correct settlement, as it appears to us, is to put the parties in the position they stood in, on the 31st of December, 1841. Then a fair settlement can be made of the plantation affairs and accounts, between the defendant, as tutor of George Henderson, and the plaintiff Caroline; also between her, and the defendant as her agent; and between him, and the succession of Mussenden ; and if the defendant can hold the plaintiff Caroline responsible for the debts of her former husband, the question can be tried separately. How the parties will stand, when the rights of each are separately investigated, remains to be seen ; but, as the matter now stands, the defendant has an advantage acquired by asserting his pupil’s rights in his individual name, and charging *348 the plaintiff Caroline with the debts of the succession he administers ; also in charging, as paid by himself, what the Messrs. Montgomery have paid out of the proceeds of the crops from the plantation. The testimony satisfies us, that the plaintiff Caroline was not capable of understanding correctly accounts rendered in the manner those were by the defendant; that she relied confidently on his acts and assurances; and that she has fallen into- errors of a grave nature, such as will, in our opinion, avoid the note executed at the time.
We do not think the act passed on the 30th of May, 1842, a sufficient ratification of the previous transaction. It does not state any errors or omissions which it was intended to correct or ratify, and is a mere repetition of a previous promise, which the party supposed to be obligatory, not then being informed of the errors that made it voidable or void. Article 2252 of the Civil Code, and the decision of this court in 1 Robinson, 457, bear directly on this point; and state what is necessary to make a complete ratification. Nor does the giving of the note of Doyle, on account of the larger one given to the defendant, make the case stronger. The amount of the note, though paid in full, could have been recovered back, if paid in error. It is a cause which will, in all cases where proved, avoid a contract; and the party is entitled to relief, even on a contract which has been executed.
The plaintiffs have asked us to amend the judgment, by allowing the sum of $823 61, the amount of a draft drawn by the plaintiff Caroline, on W. &. J. Montgomery, the proceeds of which went into the hands of the defendant, for the purpose as he alleges, of paying a portion of Mussenden’s notes, falling due in 1842. As our judgment will open all the matters in controversy between the parties for future investigation, we will leave this claim to be examined with the others.
The judgment of the District Court is therefore affirmed, with costs in both courts ; but this judgment is not in any manner to prejudice or affect any claims the parties may have against each other, arising out of or included in the settlements made on the 31st of December, 1841, and in May, 1842.